UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| UNITED STATES OF AMERICA, | |
|---|---|
| v. | Crim. Action No. 11-129-03 (CKK) |
| ROBERT CARL RICHARDS, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER
(May 9, 2011)

This matter comes before the Court upon the Government's Motion for Emergency Review and Appeal of Release Order. Defendant Robert Carl Richards ("Defendant" or "Richards") initially appeared before Magistrate Judge Deborah A. Robinson on April 27, 2011, and a detention hearing was scheduled for April 29, 2011. An indictment was issued on April 28, 2011, charging Defendant with conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 846. Late in the afternoon on April 29, 2011, Magistrate Judge Robinson held a detention hearing and ordered that Defendant be released pursuant to 18 U.S.C. § 3142. Shortly after that hearing, the Government filed the presently pending Motion for Emergency Review and Appeal of Release Order. This Court stayed the release order pending an evidentiary hearing to review Magistrate Judge Robinson's ruling. The Court held an evidentiary hearing on Monday, May 2, during which it heard evidence from the Government and argument from both sides. For the reasons stated upon the record at the hearing, which are incorporated herein, the Court vacated Magistrate Judge Robinson's order releasing Defendant and ordered that Defendant be detained pending trial.

(N)

## I. BACKGROUND

Defendant Richards has been charged in an indictment with conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(ii), which is a violation of 21 U.S.C. § 846. The indictment also names codefendants Gezo Edwards ("Edwards"), William Martin Bowman ("Bowman"), and Willie Shawn Moorer ("Moorer") as coconspirators.

During the evidentiary hearing, Special Agent Winifred Fleming of the FBI testified regarding the criminal investigation that led up to the arrest of Defendant Richards and his codefendants. She indicated that between July and November 2010, Bowman was tracked making five controlled purchases of crack cocaine and powder cocaine totalling about 108 grams. Beginning in January 2011, the FBI intercepted telephone calls made by Bowman to various individuals that indicated he would be able to supply them with cocaine. Law enforcement surveillance of Bowman showed Bowman arranging meetings with individuals at various locations for what appeared to be drug transactions.

Between March 12 and 14, 2011, Bowman was observed entering and exiting a storage facility located at 3005 Kenilworth Avenue in Hyattsville, Maryland, where he rented Unit A306. Video footage from the storage facility showed Bowman rolling a red suitcase past the entrance gate, followed by Edwards. On March 18, 2011, Bowman arrived at the storage facility in the passenger seat of vehicle that had been rented by Richards and which Richards had been seen driving at around this time. On one occasion after visiting the storage facility, Bowman was observed at an apartment building at 29 46th Street SE, where he met with a series of people in what appeared to be drug transactions in or outside the building. The same day, Richards was

observed meeting with Bowman and spending time inside the apartment building while Bowman appeared to meet with customers outside the building.

On April 4, 2011, Richards and Bowman were both observed near the post office at Hechinger Mall off Benning Road in Northeast D.C. Bowman was seen removing a black duffel bag from his vehicle, placing it into the back seat of Richards's vehicle, and getting into Richards's vehicle as they drove to a house associated with Edwards in Lanham, Maryland. Once there, Bowman and Edwards left to go to the Hyattsville storage facility, while Richards returned to Hechinger Mall and gave the black duffel bag to Moorer.

On April 6, 2011, Bowman flew from Baltimore to Los Angeles.

On April 20, 2011, Richards was observed meeting with Bowman and another individual named Joseph Nell ("Nell") and proceeding to a Radio Shack off Rhode Island Avenue in Washington, D.C., where they met with Moorer. According to pen register information obtained by the FBI, Richards and Bowman made frequent calls to Nell. The FBI intercepted a telephone call earlier that day between Bowman and Richards in which they discussed meeting and two forms of identification. At the Radio Shack, a Green Dot prepaid debit card was purchased in Nell's name with a value of $1500. The FBI later determined that nearly all of the funds on that card were spent at Door to Door Storage in Jessup, Maryland, a shipping company that specializes in shipping "pod" containers.

On April 25, 2011, surveillance video recorded Bowman's vehicle pulling up to the entrance gate of the storage facility in Hyattsville. The video shows Richards walking through the entry gate on foot with a black rolling suitcase while Bowman drives through. A telephone call between Bowman and Richards intercepted earlier that day indicated that Richards got lost

on his way to a location, which FBI agents believed to be the storage facility. Closed-circuit television video surveillance from inside storage unit A306 shows Bowman placing the black suitcase inside the unit and leaving. Later that day, Bowman and Edwards are seen returning to the storage facility. The video shows Edwards alone in the storage unit opening the black suitcase and handling bundles of blue brick-like packages, 29 in total. The video also shows Edwards opening some of the bricks, which contained a white powder; placing that powder into a Tupperware bowl; separating that powder out into smaller bags; weighing the smaller bags; and placing the smaller bags back into the suitcase. Edwards then left the unit, leaving the suitcase inside.

On the night of April 25, 2011, the FBI executed a search warrant and seized the contents of storage unit A306. The seized contents included the red suitcase that Bowman had previously been seen bringing into the storage facility, the black suitcase that Richards had been seen wheeling into the storage facility and which Edwards had opened inside the unit, and another black suitcase. The FBI determined that the first black suitcase contained 29 kilograms of cocaine, with an estimated street market value of approximately $1 million. The FBI also seized a semiassault rifle, a Glock pistol, two bullet-proof vests, two or three scales, a money counter, the Tupperware bowl that Edwards was seen using, and two trash bags filled with approximately 65 empty kilo-sized wrappers with white powdery residue.

On April 26, 2011, the FBI intercepted a telephone call between Bowman and Richards in which they arranged to meet later that day. After this phone call, Bowman was observed entering the storage unit. When Bowman realized that its contents had been seized, Bowman placed a call to Richards and told him to come to the storage facility in an angry, upset tone of voice.

Bowman placed a second call to Edwards. Shortly after this, FBI and police officers arrested Bowman as he was leaving the storage facility. Richards was apprehended as he was driving up to the entrance of the storage facility, and Moorer was apprehended as he was following Richards. Edwards was intercepted as he was on his way to the storage facility and was also arrested.

Once in custody, Bowman waived his *Miranda* rights and told FBI agents that he gets shipments of cocaine from California. Bowman stated that the cocaine was placed in suitcases and put inside pod storage containers that were then shipped from California to somewhere in Maryland. Bowman said that he had planned to meet Richards at the storage unit and then move the cocaine to another storage location to be "cut down" or "stretched."

During the period between March 19, 2011 and April 26, 2011, the FBI intercepted approximately 53 telephone conversations between Bowman and Richards. Between September 28, 2010 and April 25, 2011, records indicate that over four hundred calls were placed between Bowman's telephone and a telephone connected to Richards.

## II. THE BALANCE OF FACTORS MILITATES IN FAVOR OF DETAINING DEFENDANT

The Court reviews *de novo* whether there are conditions of release that will reasonably assure the safety of any other person and the community. Because Defendant has been indicted for an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act, there is a rebuttable presumption that no conditions or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(A). In conducting its analysis, the

Court examines the available information that touches upon: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community. *See id.* § 3142(g). In considering these factors, the Court determines that Defendant has not rebutted the presumption in favor of detention, and therefore the Court orders that Defendant be detained pending trial.

### A. *Nature and Circumstances of the Offenses Charged*

In determining the nature and circumstances of the offense charged, the Court must take into consideration whether the offense is a crime of violence or involves a controlled substance or firearm. In this case, the charged offense is very serious, involving a large amount of cocaine, with a street value of approximately $1 million. This suggests that this is not a "minor" drug offense but rather a sophisticated drug trafficking conspiracy. Furthermore, the items seized from the storage unit included not just drugs but firearms, suggesting that Richards was involved in a potentially violent drug conspiracy. Therefore, the Court concludes that the nature and circumstances of the charged offense weigh strongly in favor of detention.

### B. *Weight of the Evidence Against the Defendant*

The weight of the evidence is the most critical factor before the Court and the one that the parties have primarily focused on. The Court finds that the weight of the evidence in this case is significant and therefore weighs strongly in favor of detention. The Government has strong evidence against Bowman based on the controlled purchases of cocaine in 2010, his pattern of arranging meetings with potential customers, and his own inculpatory statements. The frequency

of telephone calls between Richards and Bowman demonstrates that they are closely associated. The Government also has evidence that Richards met with Bowman during the time he was engaging in what appear to be drug transactions. Richards's rental car is seen with Bowman at the storage facility, and Richards is later seen at the storage facility wheeling the suitcase that is later determined to contain 29 kilos of cocaine. Richards is also observed with Joseph Nell during the purchase of the Green Dot card, which is used at a storage company that ships pod containers, the method identified by Bowman for shipping the cocaine from California. The seizure of the cocaine worth $1 million as well as firearms and other drug paraphernalia is strong evidence of a serious conspiracy. Bowman's admissions that he and Richards planned to meet up at the storage facility to transport the cocaine to another location is credible and corroborated by the other evidence presented to the Court.

This evidence strongly suggests that Richards knew that he was involved in the distribution of cocaine. Although there are no recorded conversations referencing drugs or other evidence directly showing Richards in possession of cocaine, the evidence points to a Richards's distinct role in the conspiracy by assisting Bowman with transportation of the cocaine so that it can be sold by others. Given the frequency of his contacts and meetings with Bowman, his trips to the storage facility, and the volume of cocaine involved, it is implausible that Richards was unaware of what he was involved in. Therefore, the Court concludes that the weight of the evidence against Richards is substantial and justifies pretrial detention.

    C.     *History and Characteristics of the Defendant*

With regard to the third factor, Defendant has several prior convictions for drug offenses. Only one of those convictions was a felony, and it occurred many years ago. However, the

Defendant's history of drug-related conduct and apparent escalation of involvement with drugs provides the Court with reason to believe that he may continue to be involved with drugs if he is released before trial. Therefore, this factor weighs somewhat in favor of detention.

> D. *The Nature and Seriousness of the Danger to Any Person or the Community that Would Be Posed by the Person's Release*

The criminal indictment against Defendant is serious, implicating a large-scale drug trafficking operation that poses a significant danger to the community. However, Defendant has significant ties to the community and the support of his family, suggesting that he is not a flight risk. Nevertheless, Defendant's alleged involvement in a large-scale drug operation provides the Court with reason to believe that his release would pose a danger to the community. Therefore, this factor weighs in favor of pretrial detention.

### III. CONCLUSION

Upon consideration of all of the evidence and the factors set forth in 18 U.S.C. § 3142(g), and the possible release conditions set forth in § 3142(c), the Court finds clear and convincing evidence that Defendant's pretrial release constitutes an unreasonable danger to the community, and the Court finds clear and convincing evidence that no condition or combination of conditions can be imposed that would reasonably ensure the safety of the community were he to be released pending trial. Defendant has failed to rebut the presumption in favor of pretrial detention required by § 3142(e)(3)(A).

Thus, for the foregoing reasons, it is this 9th day of May, 2011, hereby

**ORDERED** that the Government's [7] Motion for Emergency Review and Appeal of Release Order is **GRANTED**; and it is

8

**FURTHER ORDERED** that Defendant be detained pursuant to 18 U.S.C. § 3142(e); and it is

**FURTHER ORDERED** that Defendant be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal; and it is

**FURTHER ORDERED** that Defendant be afforded reasonable opportunity for private consultation with counsel; and it is

**FURTHER ORDERED** that upon order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the Defendant is confined shall deliver the person to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

_____
COLLEEN KOLLAR-KOTELLY
United States District Judge

Copies To:

Rudolph Acree
Suite 506
1211 Connecticut Avenue, NW
Washington, DC 20036

Steven B. Wasserman
U.S. ATTORNEY'S OFFICE
Narcotics Section
555 Fourth Street, NW
Washington, DC 20530